Attorneys please step forward. Please identify yourself and tell us how much time. Good afternoon, Elliot Wicks here on behalf of the appellant Scott Reedy. My name is Paul Bargill and I represent the appellant Warren Reedy. And I would say 10 minutes for my opening argument and five for rebuttal. And this is for recording purposes. It doesn't amplify. So keep your voices up. Got a crowded courtroom. I want everybody to hear your argument. Sure. Thank you. You may proceed. Thank you. May it please the court. Again, my name is Elliot Wicks. I represent the appellant Scott Reedy. And this matter comes before this court on the appeal of the entry of the July 30th, 2017 order in the Domestic Relations Division of the Circuit Court of Cook County. It also comes on this court's call where in the November of 2017 the order denying the motion for reconsideration filed by the appellant and the entry of that order. The precise issue is whether or not the trial court can properly enter a retroactive child support order dating back some six years prior to the entry of part of the filing of a motion for additional or modified child support. I thought your question encompasses the issue because you assumed it's retroactive. Isn't that the issue? The issue is, is it a modification or is it asking for what was due? I would agree with that premise. I think that is the kind of zenith or pinnacle of the issue that brings us here today. But I think that the question to that answer is, I mean, in my estimation is an easy question to answer. Our Illinois Supreme Court has already defined what a modification means. And we raised that in our opening brief. And that is precisely the Peterson case. And I think the Peterson case is this case. And I would like to say as sort of an aside, though I'm sure the appellee will mention this in their argument, they try to distinguish Peterson. And we should get this out of the way right away. They distinguish it based on what they believe distinguishes it, which is that this case in Peterson reserved support and therefore no actual dollar value was entered in the original judgment. But Peterson is not limited to that ruling. As a matter of fact, Peterson, all the language that is just as you hear all the time, that where there's no ambiguity in a statute. So in Peterson there was no support order. There was a. The issue was reserved. The issue was reserved. Support didn't rule on that issue. Some intent, you know, ruling on it at some time in the future. That's correct. That's it. Well, but in this case, and this is a question I want to just get to really quickly because it's a question that's really bothering me. The trial court, did it base its final ruling on the dollar amount that would have been calculated based upon the actual tax returns or did it actually do a modification? It modified by definition. Well, maybe, maybe, maybe that's the question that we're still trying to answer. And the question is the original order provided for a percentage. Correct. I believe it was 28 percent. And am I correct? I don't disagree with the premise. Which part of it? I just simply. That's a fact. The original order provided for 28 percent. It actually provided for a set amount based on a dollar value. And it happened to mention that the guidelines are 28 percent. And therefore, it had a precise number of, you know, I'm going to approximate it. Let's say it's about 2,400. But it recited in the judgment the exact dollar figure. And that dollar figure was paid consistently month after month after month. There was no average at any time. So the purpose of giving the tax returns was to determine what the 28 percent would be each year. Year after year, that's correct. Correct. So if the tax returns were not provided, there would be no way of knowing what that percentage should be. I respectfully also disagree with that premise. And the reason I disagree with that premise is because both the statutory authority under Section 510 provides a basis by which a litigant, in this case Maureen Reedy, could come to court and request the tax returns. The statutory authority does not give an exception. Well, does she need to come to court to request the tax returns, or does she just need to request the tax returns? The order had already provided for the tax returns to be turned over. I agree with that premise, that the tax returns should be turned over under the judgment whether or not there are statutory. The only way she needs to come to court is if there's some refusal to turn over those tax returns. No need to rush to court just because you post a decree. There's an order out there to follow. In order to change the – so let's take it a step further. If you're going to change the amounts that are due under the judgment, the $2,800 figure. Twenty-eight percent is what I recall being in the order. It's 28 percent, but there's a dollar figure stated in the judgment. That was based upon simply the first year. Based upon the net income of Mr. Reedy in the first year. So then, therefore, year after year, the tax returns will be provided. Correct. And then whatever that 28 percent is of the income would then be – net income would then be calculated. It would be calculated. And therefore, the support would change each year based upon net income. It could even go down. I agree. It could go up. It could go down. But under your premise, we're missing a step. What step? The step is once you provide the tax returns, a modification order has to be entered by a court in order to bind Mr. Reedy to whatever the calculation is. The parties are free to agree, but an order still would have to be entered to be binding upon the parties. What basis is that? What rule are you referring to that this – that the settlement agreement, the marriage settlement agreement, did not provide for that without having to go to court? Well, I mean – What the whole idea is, he was supposed to, every year, provide the tax returns. He didn't. He was supposed to provide 28 percent, and all they did is calculate what should have been paid over that period. She didn't ask for 29 percent. She didn't ask for 27 percent. He didn't come in and say, I should only be paying 25 percent. He didn't actually have change. I mean, what you're saying, in answer to Justice Walker's questions, is just because there was a figure in there for the first payment based upon the current tax returns, that anything that would change that had – encompasses a modification. I'm not saying that. Okay. So what are you saying? I'm saying that the Supreme Court has said that. No, but I don't see it. Well, I can quote the language, and it says here, the plain – Correct. The plain and ordinary meaning of the verb modify, which would encompass Section 5-510, is to make a basic or important change in colon alter. And the Supreme Court was citing Webster's Third New International Dictionary. Black's Law Dictionary also states – is cited by the Supreme Court. The word conveys the notion of, quote, change or alteration. What's alter here? There's no alteration. There was alter. No, there wasn't. There's still 28 percent. Answer that question first. Was it still 28 percent of whatever the tax returns? Yes. Okay. So you're saying that if it's 28 percent, I mean, that's what the argument is. You keep insisting that's a modification, and they're insisting, no, that's just getting what they deserve under the agreement. And, you know, part of the problem here is the ambiguity in their pleading because the word modification was used, right? It was used in the plea. It was used by the trial court in 505. It was never entered. Right. But that doesn't mean – you know, that's formal reception. In other words, we used – and not being used in the term of modification under the Act, rather it was being used as the modifying that was already there. You know, and I think that's where the confusion is. But the second – I think a couple of things, if I might. First of all, again, the Supreme Court did not limit in any way what was changed in a judgment. The amount of money that this man was paying throughout this term was at 2,800 plus or minus dollars calculated on the 28 percent. It's not an unusual order in the divorce court where the 28 percent is referenced because that's guideline statutory type of support. So I have one preliminary comment, and I want to go back to the Peterson case, but the one preliminary comment is you can imagine the Pandora's box that would be opened if everybody who had a percentage stated in their divorce decree, you know, didn't provide tax returns because most decrees provide for that, or some type of analysis or some type of documents post-judgment to determine what's being paid is accurate or inaccurate, whether it says 28 percent or it doesn't say 28 percent. So the whole purpose behind – Well, that's because most of the time there's a withholding order, and it provides for the percentage, and the employee – employer does the withholding. And then after three years, four years, whatever that period is, someone may come in on a modification. That's the kind of case that you're referring to where it would, in fact, be a modification, and then you would not be able to – the judge would not be able to provide support prior to the filing of the motion. But this case is different. As just Simon is pointing out to you now, this case involves a – the 28 percent was set. There was nothing else left for the court to do. Well, the 28 percent would always – that would never change unless, you know – Unless it was modified. Unless it was modified. But it wasn't modified. No. It was 28 percent. That's, to me, the key issue here is 28 percent. If you were going to modify it, like you said, it's usual and customary to have tax returns every year. So because incomes change, and it's 28 percent of what?  So the idea was not to have to come to court. If everybody was doing what they're supposed to do here, you wouldn't be here, and this case wouldn't be here because he would have paid the 28 percent every year. He didn't do it, so there had to be a calculation, and that calculation had to do with years where his income changed. And so it had to be determined, and that's what was done. Well, let me – I'm going to ask a rhetorical question, and I'm going to answer my own question. That's good, because I'm not going to answer it. In every single case, using Justice Walker's example of the order of withholding that is sometimes entered in cases, in that case, what is the mechanism by which, if income goes up, or what is the method where there's no 28 percent if income goes up, tax returns are given, but there's no 28 percent stated? What's the mechanism? He has two kids at the time of divorce. Every note knows that it's 28 percent. That 28 percent is a 100 percent red herring, because you have to answer the question, what happens when a change in income occurs? One party agrees it occurred. Maybe one party agrees it didn't occur. One party says, here's the tax returns. I don't agree with your calculation. What would Maureen have to do? Maureen would have to go to court and get what? She would have to petition for a modification. There's no other animal around, and it should be noted that if he was inviolable. Or she would ask for a clarification. It seems to me that this agreement, tell me if I'm wrong. They agreed to all this, all these terms, and said she's going to get, for example, $28,000 a year, parentheses 28 percent. That tells me that he was making $100,000, 28 percent, $28,000. Provision of tax returns, it seems to me, allows for next year he makes $200,000. Rather than going into court, he, the parties, it seems to me, agree, they get 28 percent of $200,000 or $56,000. Right? I, again, disagree with the pros because that's not what the judgment in Meryl's settlement agreement says. It says it's based on 28 percent, but it doesn't go into future years, and it doesn't provide a mechanism by which automatically quid pro quo she would get X number of dollars. It would require some action on her part, which is 510. And the action would be what? Go into court and say 28 percent of his current salary is $56,000. He owes me $28,000. The two things that she did, one unsuccessfully and the other successfully, she sought a rule to show cause for failure to provide tax returns. On the record, the judge denied that belief and went to modify the judgment. And if I might, before I... Did he calculate using my numbers, did he calculate that income double, for example, 28 percent of the then current income created a greater amount that he owed her? I believe that's essentially how he used the 28 percent figure. But, again, the 28 percent figure isn't some magic number that was placed in the decree. Why was it placed in the agreement? The 28 percent only represented, in my estimation, the fact that they had two children. It's statutory. 505 said that if you have two children, it's 28 percent. You didn't need that 28 percent in there to make the calculation. If that was removed from there, you'd make the same calculation  Okay, if the 28 percent had not been in this agreement, just the $28,000, let's call it that, the next year, she suspects that he made more money. It turns out that he made $200,000 a year. Would she be entitled to 28 percent of that? Theoretically, she would be. She would need to follow the strictures of Section 510. We talked about the 28 percent being the trigger. You're not really modifying. But the Supreme Court disagrees with that. I am of the school that where words on a paper, whether it's a court writing and a careful court like yourselves, or a careful court like our Illinois Supreme Court, or like our state legislature, and there's no ambiguity, we don't follow the ambiguity. We say to ourselves it's not ambiguous. We can read the words. We understand what they mean. We have to give their plain meaning to it. Well, if we do that, though, you keep talking about 510. They talk about 505. That's the thing. One is modification. One is enforcement. You keep characterizing this as a modification. And I understand that's your argument. They're going to get up here and they're going to characterize this as enforcement. To me, that's the question. Which one does it come up after? And the scenarios that have been proposed all don't change what is statutorily required. Now, if she wanted to get more than the 28 percent, et cetera, she'd have to have it modified because that doesn't happen without you coming in and modifying. That would definitely be a 510, right? Definitely. You agree? Definitely. But if all she wants is what she was entitled to, that's the question. And you say that's a modification, and they say that that's enforcement. So if I might, it did say that we hold, this is Peterson again, we hold that the legislature intended the verb modifying, that they put in quotes, as it is used in Section 510 to connote, and this is the important word, any action taken to adjust, change, or alter the obligations of one or more parties, key words, subsequent after the entry of the divorce decree. So where was the modification of the 28 percent? But I think the analysis, Your Honor, is twofold. It can't be onefold. But the analysis is, oh, well, you have a 28 percent order, which, again, I go back and say every person with two children paid at least 28 percent by the guidelines, and most people, I would argue, I'm making an argument, would be that, you know, they don't typically come in and say it's 28 percent. They typically come in and say you're making more money, I want more money. And therefore, it happens every day across the street, petition to modify, he's making more money. The only nuance here, the only nuance is that, you know, if the tax returns, if the court finds here that as a matter of fact in the underlying case the tax returns weren't provided, that's the only issue. That's the only nuance. Otherwise, every time, let's say the magic words that the tax returns weren't in there, and it said 28 percent, $94,000, there was no obligation to give the returns. It can't really be argued that on a petition to get more money, whether we call it to enforce or modify, it can't be argued that it's not a modification based on the plain language of what the Supreme Court says. It's twofold. Twenty-eight percent more money. You're changing the financial obligation of a party. And I might ask some more. What you call a financial obligation of the party is simply the amount of money the party must pay under the settlement. Exactly. That's a change in the amount. It's not changing the obligation. The obligation is the same 28 percent. It requires an examination of support retroactively before the filing of a petition. And, you know, that's what it is. And you're trying to get more money because the person's making more money, or someone's trying to modify because they're making less money. And what I say to you, you know, just collectively, is that the 505, and I can get into this more in rebuttal, but 505 very much clearly says that it's a religious. It is to a religious. It's a judgment. And there's history on this because our state legislature said, well, just wait a minute. If you're going to enter, we want a mechanism, an enforcement mechanism in the form of a judgment. And that was one of the cases cited in the briefs that we talked about, in our brief, but also in the appellee's brief, Maureen's brief. And in that case, they indicated very clearly that it's to enforce a judgment. You can't enforce a judgment of something that is not ascertainable. You couldn't go get a citation to discover assets because the amount is not ascertainable. And the history of it was we want to make these judgments for each institution. They talk about it. The cases that we both cited talk about 505 is for installments of payments that have not been made. There are no installments that remained unpaid at the date that petition to modify was entered. Yeah. I just want to point out that I think your reliance on Peterson is misguided. Here's why. The kids in this case, at the time the court entered its order, were, I believe, 16 and 14. Peterson involved college contribution. And that is clearly a modification because that's no longer child support. It's not what it is. It's exactly that. It's college contribution. In Peterson, the court ordered over $200,000 in college contribution. And it awarded that prior to the time that the petition was filed. And that was the problem with Peterson. So that was clearly a modification, clearly under 510. This case is different, as the other justices have pointed out already. This involved a fixed amount based on a percentage, 28%. Nothing's changing from the original order that the court entered years ago. So, and therefore, when you rely on Peterson, which is totally different, as I stated, it involves college contribution, which is clearly a different animal. I agree that the facts of that case are different, but you can't get away from the fact that the Supreme Court didn't limit its ruling based on 513 and it didn't limit its ruling based on the fact that the amount had not been set. It simply said that statutorily, 510 requires us when there's any change because they reserved on that issue, right? To your Honor's point, that issue was reserved. It can't be a surprise. They reserved it. It just had not been set. And they, so they said that, therefore, we are going to set an amount now. Correct. The Peterson college contribution was reserved. In this case, the case before us now, in the Reedy case, child support was not reserved. A specific amount was ordered, and that was the 28%. I have no further questions. And I don't disagree with the. You might, you have another point, if you want to make your, I think we've gone over this. Okay, yeah, I don't disagree that it doesn't say that, but I still don't think that Peterson, you know, limits the Section 510. Otherwise, what you do is you say, I think what the questions here are being asked of me and of Mr. Reedy are this. When you change a dollar value, is that a modification? And I don't see how, based on 505, it talks about it being each payment installment is a judgment, and that if a judgment's not, if an installment's not paid, that's an arrearage. How in the world would you calculate an arrearage here that doesn't exist, and how would you enforce a judgment that doesn't yet exist? It doesn't exist. The concept is you go to court and you say, they haven't paid me 16 payments of $2,000, and I want that payment made, arrearage, judgment, 505, as opposed to I have 28% order here. I just learned through a grapevine that he just took a job at Motorola, and I want more money, modification. Otherwise, you're opening up a Pandora's box, I think, and you're obliterating Section 510. It can no longer be read as a, no longer, when anybody comes in and asks for more money, we open up the door for every litigant to make the argument that 510 does not apply because there's the percentage in the order. All right. Thank you. May it please the Court, my name is Paul Bargill again, and I represent the Eppley-Moore Ingredient. I will try to make my argument brief since I see we're running out of time. You have your full time, don't worry. I'm sorry? You can have your full time. Okay. Thank you. I would agree with Your Honor that the key issue in the case is whether Maureen's action is an action to enforce the judgment regarding child support or whether it's a modification of the judgment for child support. Although not raised by counsel, I assume maybe he's abandoning that argument, he argued in his brief that Maureen waived her right to claim that this was an enforceability because he said in his brief at no time in the trial court did Maureen seek any relief pursuant to Section 505. Well, that's not an accurate statement. The Petition for Child Support and Other Relief in the opening paragraph says that Maureen requests this honorable court, meaning the trial court, pursuant to 750 ILCS 5-505, 510 and 511, have a judgment for dissolution of marriage for the relief that she requests. So she did bring up Section 505 and did indicate that that was part of the basis for relief. More significantly, though. Well, what's your response to his question at the very end, or his response at the very end, that there's no arrearages don't exist here? That's not true. Okay. What's your response? Well, my response is if you take a look at the judgment itself, okay, the judgment provides for child support in an MSA which is incorporated into the judgment. It says they agree and acknowledge that such child support is a guideline support of 28 percent based on Scott's net annual salary, and then they come up with a net annual salary. In large measure, I think, because you have to have a number in order to apply the 28 percent at that time. And they come up with a monthly record of 2148. But the next paragraph of that MSA, which the court is well aware of, I know, is that for each year that Scott is obligated to pay child support, he is to provide Maureen copies of his federal and state tax returns with all schedules attached and statements with calculations as to his net income within 30 days of filing. And that's what the statute is saying. Now, there would be no reason to have such a provision in there if all he was supposed to do was provide 28 percent of his income based on his $92,000 a year salary. Why would she need to know that? I mean, she wouldn't need to know that. It was to ensure. Did she request the tax returns? No. No. No, she did not until we got to the time of the judgment. So it sounds like a gotcha type thing that she goes on for years and she doesn't want to see any tax returns. She's fine. There's no question about wanting to see tax returns. She's fine with what's being paid. And then all of a sudden she decides, oh, by the way, I think I'm going to go back and get this money from the last 10 years. No, there's no indication that you're going to get the tax returns. She's never requested the tax returns. No, but the requirement in the MSA which was incorporated into the judgment is that Scott and the trial court addressed this, that Scott will provide copies of his tax returns. And when he doesn't provide them, the only way it works is that someone should ask. Because, you know, again, everybody thinks that in post-decree you just run to court. That's not what you do. You try to cooperate first. You ask for the tax returns. And if Scott refuses to give her the tax returns, then she goes to court. But in this case, she never asked for the tax returns. No, she never had any allegation. The individual is supposed to do. But I was going to say with regard to running a court, had he provided tax returns from the first year, the second year, whatever, and had she known what those tax returns revealed, she would have gone to court. That was what that provision was there for, to ensure that he paid the appropriate amount of money. But she didn't go to court and she never asked for the tax returns. It just became, I got you. I'm going to be able to get all this money. Well, I disagree with your Honor's characterization. And I think, too, that she had no legal obligation to do that. And I think that that is what is fundamental here. I wanted to point out something, too. The record indicates without question, without question, that Scott vastly understated his income and therefore underpaid his child support for all the years in question. I'd like to call the Court's attention to this is in Scott's brief at page 6. It's a chart that he has prepared. It's got four columns. The first column is W-2 after tax income. And that's roughly $100,000 or $102,000 a year. And then the next section is called Dividends and Interest from Investments. And that's anywhere from a few thousand to $10,000 a year. I presume that this is income from investments outside of his company, Source One. And then the third column says Dividends Issued by Source One. That's the business that he owns. Okay, those dividends range anywhere from $10,000 in 2013 up to $733,000 in 2011. And then the last column says Scott's total income. And if you take a look at his so-called total income, it almost in every case, with the exception of the one year, it determines his total income by taking the first two columns, adding them together, and coming up with a number. So in 2009, it's $106,000 and $109,000 and so on. So that is certainly an indication that his income was substantially greater than what he says. But if you take a look at the testimony in this case too, the testimony by Mr. Rubin, who was his tax accountant and his tax advisor, the guy who filed his taxes, Rubin was asked, and this is significant in terms of the 2011 $733,934 dividend that he was paid. Rubin testified that the $733,000 came out of Scott's corporation to him tax-free in 2011. But the issue here, though, isn't the amounts. The issue is whether this is an enforcement action or a modification action. I'm sorry, it's an enforcement. It's an enforcement based upon the documentation, okay, which shows that he vastly underpaid. I don't think there was any question that he was entitled or obligated to pay net income, 20 percent based on net income. That's why that second section, 4B, says that he's to provide these returns in order to demonstrate, it says, his net income. Well, the objective here was, as it is usually, unless it's reserved, is that you don't have to come back to court. The idea here, it would have gone on year after year. It would have been fine. And what happened is he didn't meet his obligation, and she came in to have him meet his obligation. That is correct. That is correct. But, you know, I think it's significant too that the idea of the one that came with the figures and stuff here is really amazing. Well, it's really irrelevant to our determination, I think. And actually, it's not so amazing to me, as a certified public accountant. It just simply says those are the dividends that were issued. It doesn't say that Scott received that money. So it's crystal clear to me. I don't know what you're saying that you don't know what I'm saying. That's not entirely correct, Your Honor. I don't even know exactly what it says. Well, Ruben says. Those are dividends that were paid out. That doesn't necessarily mean that that's the money that he received. So we really should move on from that, because I think Justice Sotomayor is correct. That's not really the issue. Ruben said, with regard to the $733,000, and this is at pages 382 and 383 of the record, that part of the mistake. We're aware of that. I don't want you to take more time on that, because, I mean, we're not deciding whether the amount is correct or not. The issue is whether you brought this as under the facts and circumstances of this situation. It's a modification or an enforcement. That's it. I would say that the issue about whether she sat and waited, I don't think that that's been presented to the trial court. I don't think that there's evidence in the record to determine what circumstances were in terms of why she did or didn't do what she did, other than the fact that she didn't have the tax returns. So I don't think that that's even an appropriate issue for consideration. I would also say, too, that as far as the trial judge is concerned, the trial judge made a calculation based on information that he was provided by Maureen, came to a conclusion. They deny whether that's true, but they don't say anywhere. They don't say anywhere what the right figure would be. Again, we're not talking about the figure. Is there anything else you wish to add? No. With regard to the jurisdictional matter, which the Court doesn't apparently sign interest in addressing, I'll rely on my brief. I'll rely on my brief with regard to that. And I would ask the Court to affirm the judgment of the trial court in all respects. Thank you. So I thank you again. Just very briefly, I want to say a couple of things. First, so I know you all read the briefs very thoroughly. I obviously can tell, and we know that from this panel. So thank you. But in the record is testimony of Mr. Reedy that he mailed at least one or two years of tax returns, at least by 2010. So, you know, just for what that's worth. The counsel already argued that this was guideline support. I already mentioned that, that it's not going to change for any litigant before the Court. In other words, that 28% could be in there. It might not be in there, but it's guideline support. Therefore, even if it's not in there, it's still 28%. And then we still have to get to the number, which I've argued to death is a modification. But, you know, the other thing I would add is it's a very unique, interesting argument that, you know, Maury has made that it is an enforcement action. I would say that in reading all the cases, I can't find any case that is on point where the dollar value changes. All the cases that have been cited have indicated that it's arrearages. It's all about arrearages. In other words, a defined ascertainable amount. And Schomburg, in particular, states that, you know, the amount of the – so it first talks – both in the same case. And it says, So at the time the motion to modify was filed by Maury in November of 2014, there technically were no calculable unpaid support payments. Certainly the judge did that at hearing. But unlike a case where you have $50, $50, $50 every week, every month, those are the types of arrearages that Section 505D is talking about, the unpaid support payments. There were no unpaid support payments. So 505D is not applicable. And then it goes on to state, though, that And then if I could, just finally to end on the case first cited in the response brief by Ms. Reedy, it does indicate, which is the Zukowski case, And one of the other issues, it goes on to state, and I'll conclude on this, that when filing and notice have been achieved, the circuit court which originally entered the judgment has jurisdiction over the subject matter in the parties. And the Zukowski case cites Otwell, and that talks about jurisdiction. The court can't even establish jurisdiction over a party until it – you know, to make changes until it files a petition to modify. So thank you for your time. I understand the court's questions and the struggles, but I do honestly believe the opinion that there's no case law when you examine the cases cited by Maureen that would support this type of conclusion, that even payments are – that these types of payments that the court finally said are due by Mr. Reedy are very clearly a modification under Section 510. Otherwise, 510 is really rendered in a lot of cases superfluous. So thank you again for the extra time. I want to thank both sides for your excellent presentations and briefs. You've given us something to think about, obviously. I don't think it's so clearly, otherwise we probably wouldn't be here. But we will consider it and take the case under advisement. Thank you very much. Thank you.